**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION**

|  |  |
|---|---|
| GLIOBLASTOMA FOUNDATION, INC. | |
| *Plaintiff*, | **CIVIL ACTION NO.** |
| v. | **JURY TRIAL DEMANDED** |
| GBM FOUNDATION, INC. | |
| *Defendant*. | |

**COMPLAINT**

Plaintiff Glioblastoma Foundation, Inc. ("Glioblastoma Foundation" or "Plaintiff"), by its undersigned attorneys, alleges as follows, upon actual knowledge with respect to itself and its own acts, and upon information and belief as to all other matters.

**NATURE OF THE ACTION**

1.    This is a civil action for trademark infringement and unfair competition under federal, state, and/or common law.

2.    Glioblastoma Foundation is a nonprofit organization dedicated to transforming the standard of care for patients suffering from glioblastoma, an aggressive and devastating cancer with a poor long-term prognosis and unique treatment challenges.

3.    Since 2016, the Glioblastoma Foundation has leveraged its medical expertise in glioblastoma treatment and research to identify, support, and fund innovative research projects and initiatives that the Glioblastoma Foundation determines likely to advance the standard of care for glioblastoma patients and improve surgical outcomes, diagnoses, and treatments.

4.    As the leading nonprofit organization in this field, donors, patients, and funding recipients alike have come to associate the Glioblastoma Foundation with its well-known

GLIOBLASTOMA FOUNDATION trademark.  As a testament to this, the Glioblastoma Foundation obtained U.S. Registration No. 6933147 for the GLIOBLASTOMA FOUNDATION mark on the Principal Register from the U.S. Patent and Trademark Office.

5.      The Glioblastoma Foundation has regrettably been forced to bring this action given the Defendant GBM Foundation, Inc.'s adoption of a nearly identical trademark which has been causing substantial and ongoing actual confusion in the marketplace and materially misleading donors.

## PARTIES

6.      Plaintiff Glioblastoma Foundation, Inc. is a North Carolina nonprofit corporation with its principal place of business at 2451 Croasdaile Farm Parkway, Suite 109, Durham, NC 27705.

7.      Defendant GBM Foundation, Inc. is a Georgia nonprofit corporation with its principal place of business at 6350 Lake Oconee Pkwy, Suite 110-117, Greensboro, GA, 30642.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a) and (b).  Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over the Glioblastoma Foundation's state law claims because those claims are substantially related to the Glioblastoma Foundation's federal Lanham Act claims.

9.      This Court has personal jurisdiction over Defendant, and venue is proper in the Middle District of Georgia pursuant to 28 U.S.C. § 1391(b) and (c) and 28 U.S.C. § 1400(a), because the Glioblastoma Foundation is being harmed in this District; Defendant is headquartered in this District; Defendant's principal is domiciled in this District; Defendant is

conducting business in this District; and Defendant is violating the Glioblastoma Foundation's rights in this District.

## GLIOBLASTOMA FOUNDATION

10.    Plaintiff Glioblastoma Foundation is a leading organization dedicated to improving the standard of care for glioblastoma patients through the advancement of targeted and small molecule therapies as alternatives to radiation and chemotherapy that can prolong survival and increase quality of life.

11.    The Glioblastoma Foundation carries out its important mission by leveraging the expertise of its scientific advisory board (comprised of physicians, pharmacists, and public health experts) and scientific staff to reach informed, science-based conclusions regarding the funding of recipients most likely to advance the standard of care for glioblastoma patients.

12.    As a result, the public has come to associate the Glioblastoma Foundation's GLIOBLASTOMA FOUNDATION trademark with medical and scientific expertise in steering charitable donations toward targeted small molecule therapy alternatives to radiation and chemotherapy in the fight against glioblastoma.

13.    The Glioblastoma Foundation's scientific advisory board is led by Dr. Madan Kwatra, the Director of the Glioblastoma Drug Discovery Group at the Kwatra Lab and Associate Professor in Anesthesiology at Duke University School of Medicine.  Dr. Kwatra has researched glioblastoma biology since 2009, when he discovered a constitutively active form of NK1R in glioblastoma.  Since then, Dr. Kwatra has leveraged his expertise in medicinal chemistry, receptor pharmacology, cell signaling, and clinical trials to develop effective therapies against glioblastoma.  Dr. Kwatra's laboratory currently studies mechanisms of signal transduction through substance P receptor in human glioblastomas.

14.    By leveraging the expertise of Dr. Kwatra and the Glioblastoma Foundation's scientific advisory board and staff, the Glioblastoma Foundation has successfully funded many treatments and drugs that show promise to improve the standard of care for glioblastoma patients.  For example, the Glioblastoma Foundation recently funded the HSP-90 drug, which has entered Phase I clinical trials.  *See*  https://glioblastomafoundation.org/news/hsp-90-drug-funded-by-glioblastoma-foundation-gets-nih-funding.  The Glioblastoma Foundation also recently funded an MRI-guided focused ultrasound study for subcortical glioblastoma at the department of Neurosurgery at Weill-Cornell Medical Center.  *See* https://glioblastomafoundation.org/news/glioblastoma-foundation-funds-mri-guided-focused-ultrasound-for-subcortical-glioblastoma.

15.    Recently, the Glioblastoma Foundation has partnered with Basilea Pharmaceutica Ltd, Allschwil, on the development of a promising drug candidate for the treatment of glioblastomas, Lisavanbulin (BAL101553, the prodrug of BAL27862), which has demonstrated in-vitro and in-vivo activity against diverse treatment-resistant cancer models, including tumors refractory to conventional approved therapeutics and radiotherapy.  *See* https://www.basilea.com/news#news_1499.

16.    In May 2024, the Glioblastoma Foundation also established a new Genomic Testing & Research Laboratory that provides glioblastoma patients more comprehensive genetic testing services, allowing each glioblastoma patient to have their tumor molecularly characterized.  *See* https://www.accesswire.com/863906/glioblastoma-foundationr-announces-the-establishment-of-groundbreaking-genomic-testing-research-laboratory; https://www.accesswire.com/910140/glioblastoma-foundation-genomic-testing-research-laboratory-ribbon-cutting-ceremony-on-sept-3rd.

17.     In addition to research and funding activities related to the treatment of glioblastoma, the Glioblastoma Foundation devotes substantial time, effort, and resources to raising public awareness about the disease.  For example, in 2019, after the U.S. Senate approved a resolution declaring National Glioblastoma Awareness Day, the Glioblastoma Foundation hosted its inaugural Glioblastoma Awareness Gala in recognition of Glioblastoma Awareness Day.  And in 2020, in an effort to raise further awareness of glioblastoma, the Glioblastoma Foundation launched a tribute fundraiser in memory of Neil Peart, the deceased drummer of the well-known band *Rush,* who passed away from glioblastoma in January 2020.

18.     The Glioblastoma Foundation promotes its important research funding mission and public awareness of glioblastoma through digital media, internet advertising, events, and sponsorships in connection with the GLIOBLASTOMA FOUNDATION trademark.

19.     For example, through its website at glioblastomafoundation.org, the Glioblastoma Foundation promotes various research initiatives; allows benefactors to donate and fundraise; provides volunteer information and opportunities to "get involved"; and lists patient, news, and event information related to the Glioblastoma Foundation's important mission.



20.    The Glioblastoma Foundation also promotes its important research funding mission and public awareness of glioblastoma in connection with its GLIOBLASTOMA FOUNDATION trademark through social media, including its Facebook and Instagram accounts which collectively have over ten thousand followers (shown below):





21.    More recently, the Glioblastoma Foundation began promoting its research funding mission and public awareness of glioblastoma in connection with its GLIOBLASTOMA FOUNDATION trademark through a podcast where glioblastoma patients and caregivers share their experiences.



22.    The Glioblastoma Foundation also partners with popular brands to promote awareness and fundraise in connection with its GLIOBLASTOMA FOUNDATION trademark. For example, the Glioblastoma Foundation partnered with Tough Mudder for the 2020 and 2021 race seasons and invited participant-contributors to join the Glioblastoma Foundation Tough Mudder Team.



23.    The Glioblastoma Foundation also partners with popular events to promote awareness and fundraise in connection with its GLIOBLASTOMA FOUNDATION trademark. For example, the Glioblastoma Foundation is an official 2025 Los Angeles Marathon charity partner.



https://glioblastomafoundation.org/glioblastoma-news/2025-los-angeles-marathon-2

24.     Owing to the Glioblastoma Foundation's substantial promotional activities, major news outlets have contacted the Glioblastoma Foundation for comment on the passing of prominent individuals from glioblastoma.  For example, in August 2018, John McCain passed away from glioblastoma, and from a universe of organizations, Huffington Post contacted the Glioblastoma Foundation for comment.  *See* www.huffpost.com/entry/glioblastoma-advocates-praise-mccain-family_n_5afc8181e4b0779345d55b9e.

25.     The Glioblastoma Foundation owns valid and subsisting U.S. trademark registrations for several variations of the GLIOBLASTOMA FOUNDATION trademark (the "GLIOBLASTOMA FOUNDATION Trademarks") on the Principal Register, including:

| Mark | Reg. No. | Class | Goods/Services | First Use in Commerce |
|---|---|---|---|---|
| GLIOBLASTOMA FOUNDATION | 6933147 | 36 | "Accepting and administering monetary charitable contributions to fund medical research" | June 1, 2016 |
| GLIOBLASTOMA FOUNDATION | 6886974 | 36 | "Accepting and administering monetary charitable contributions to fund medical research" | June 1, 2016 |

26.     The Glioblastoma Foundation has continuously used the GLIOBLASTOMA FOUNDATION name as a service mark throughout the United States for nearly a decade, since at least June 1, 2016.

27.     As a result of substantial promotional efforts, the GLIOBLASTOMA FOUNDATION Trademarks have acquired distinctiveness and achieved public recognition long prior to Defendant's first commercial use of the infringing "GBM Foundation" name.

## DEFENDANT AND ITS WRONGFUL ACTS

28.     Defendant GBM Foundation, Inc. operates a nonprofit organization focused on glioblastoma.

29.     GBM Foundation was established in 2017 as the Gail Boyter Magness Foundation, Inc. by Carly Magness Bonsignore and Ric Magness who had suffered the loss of their loved one, Gail Ashley Boyter Magness, from glioblastoma.

30.     Carly Magness Bonsignore and Ric Magness lack any medical expertise and possess no scientific background relevant to glioblastoma research or treatment.

31.     On or about October 15, 2020, Defendant filed to change its name with the Georgia Secretary of State Business Registry, requesting that "Gail Boyter Magness Foundation, Inc." be renamed "GBM Foundation, Inc."

32.     Defendant has since used GBM Foundation on its website and in social media, search engine results, and IRS records:



https://www.gbmfoundation.com/

9



**September 21, 2024**

Virtual 5K followed by an in-person gathering in Cleveland, OH.

The GBM Foundation is thrilled to partner with Chris, Alexis, and Megan to raise money and awareness for GBM research in honor of their mom and everyone's favorite Spiky Haired Lady, Cristina.

Spiky Haired Lady 5k - 09/21/24

https://www.gbmfoundation.com/



**GBM Foundation** @gbmfoundation · Jul 13
The GBM Foundation is proud to support @NBTStweets and all the great work they are doing to fund groundbreaking research and provide support to the brain tumor community. We are honored to recognized on page 18!

https://x.com/gbmfoundation/status/1812272362601234661



https://www.instagram.com/p/C0MM0EAvkC5/

# Gbm Foundation Inc.

EIN: 81-4791085 | Greensboro, Georgia, United States

## Other Names

GAIL BOYTER MAGNESS FOUNDATION

GBM FOUNDATION INC

Gail Boyter Magness Foundation

https://apps.irs.gov/app/eos/

33.     The Glioblastoma Foundation promptly objected to the "GBM Foundation" name after becoming aware of it.

34.    Defendant knew about the Glioblastoma Foundation and the success it had generated under the GLIOBLASTOMA FOUNDATION name when Defendant chose to change its name to "GBM Foundation."

35.    Defendant chose the name "GBM Foundation" despite having a universe of possible names to select.

36.    Defendant chose "GBM Foundation" knowing that "GBM" was a ubiquitously accepted abbreviation for "glioblastoma."  *See, e.g.,*

https://www.aans.org/en/Patients/Neurosurgical-Conditions-and-Treatments/Glioblastoma-Multiforme, https://www.hopkinsmedicine.org/health/conditions-and-diseases/glioblastoma-multiforme-gbm-advancing-treatment-for-a-dangerous-brain-tumor,

https://www.abta.org/tumor_types/glioblastoma-gbm/,

https://en.wikipedia.org/wiki/Glioblastoma, https://braintumourresearch.org/en-us/pages/types-of-brain-tumours-glioblastoma-multiforme-gbm, https://braintumor.org/events/glioblastoma-awareness-day/about-glioblastoma/, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5563115/,

https://my.clevelandclinic.org/health/diseases/17032-glioblastoma, https://www.cedars-sinai.org/health-library/diseases-and-conditions/g/glioblastoma-multiforme.html,

https://www.thebraintumourcharity.org/brain-tumour-diagnosis-treatment/types-of-brain-tumour-adult/glioblastoma/.

37.    Defendant is aware of this abbreviation, given that it abbreviates "glioblastoma" to "GBM" on its own website.  *See* https://www.gbmfoundation.com/about ("Ashley passed away from a Glioblastoma (GBM) in March of 2016.").

38.    The names GLIOBLASTOMA FOUNDATION and GBM Foundation are functionally equivalent in the minds of donors.  Indeed, Plaintiff's donors regularly refer to Plaintiff as "GBM Foundation."

39.    Compounding the confusion, Defendant uses "glioblastoma" and "GBM" in its advertising interchangeably, as shown below:



https://www.instagram.com/p/CxWPOnji9FS/



https://www.instagram.com/p/BddWWOohoyf/

40.     Defendant chose GBM Foundation knowing it is an abbreviated form of Plaintiff's GLIOBLASTOMA FOUNDATION name with the objective of trading on Plaintiff's goodwill.

**Defendant's Activities Have Caused Substantial Actual Confusion in the Marketplace**

41.     Defendant's activities and use of the Infringing Trademarks ("GBM Foundation" and its variations "@gbmfoundation" and "#gbmfoundation") have caused multiple instances of actual confusion with the Glioblastoma Foundation given the nearly identical names.

42.     For example, on April 3, 2024 the Glioblastoma Foundation received a voicemail from a prospective donor that was confused about the various "Glioblastoma Foundations" and wanted to know where to direct her donation.

43.     On information and belief, Defendant has received inquiries about the Glioblastoma Foundation.

44.     On information and belief, Defendant has received checks made payable to the Glioblastoma Foundation.

45.     The foregoing instances of actual confusion support the conclusion that the GLIOBLASTOMA FOUNDATION Trademarks and the Infringing Trademarks are confusingly similar in overall commercial impression, and that donors and other interested parties will continue to be confused if Defendant's activities are permitted to continue.

**Plaintiff's Unsuccessful Attempts to Resolve this Matter**

46.     On September 24, 2020, Glioblastoma Foundation requested that Defendant cease and desist using the abbreviated name "GBM Foundation" because it is confusingly similar to the GLIOBLASTOMA FOUNDATION trademark.

47.     Despite the Glioblastoma Foundation's objections, Defendant adopted the abbreviated name anyway and continued to use both "GBM Foundation, Inc." and "GBM Foundation," as detailed above.

48.     Since that time, Defendant's use of the Infringing Trademarks has continued to cause actual confusion among actual and potential donors, and upon information and belief, Defendant's use of the Infringing Trademarks has diverted donors and funds away from the Glioblastoma Foundation and Internet traffic away from the Glioblastoma Foundation's website.

**INJURY TO THE PUBLIC AND THE GLIOBLASTOMA FOUNDATION**

49.     Defendant's use of the Infringing Trademarks is likely to cause confusion, mistake, and deception as to the source or origin of the Glioblastoma Foundation's services, and is likely to falsely suggest a sponsorship, connection, or association between Defendant, its services, and/or its commercial activities with the Glioblastoma Foundation and/or its corporate identity.  Indeed, such confusion has already occurred as detailed above.

50.     Defendant's unauthorized use of the Infringing Trademarks has damaged and irreparably injured, and if permitted to continue, will further damage and irreparably injure the Glioblastoma Foundation, its reputation and goodwill, the GLIOBLASTOMA FOUNDATION Trademarks, the Glioblastoma Foundation's corporate identity, and the public's interest in being free from confusion.

## FIRST CLAIM FOR RELIEF
### Trademark Infringement, False Designation
### of Origin, Passing Off, and Unfair Competition
### Under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1)

51.     The Glioblastoma Foundation repeats and realleges every allegation set forth in

paragraphs 1-50 above.

52.     Without the Glioblastoma Foundation's consent or permission, Defendant used

and continues to use the Infringing Trademarks in commerce, as described above, in connection

with the identical services including accepting and administering monetary charitable

contributions to fund glioblastoma research.  The Infringing Trademarks constitute

reproductions, copies, or colorable imitations of the Glioblastoma Foundation's registered

GLIOBLASTOMA FOUNDATION Trademarks, including U.S. Reg. Nos. 6933147 and

6886974.  As such, Defendant's infringement is likely to cause customer confusion, or to cause

mistake, or to deceive customers in violation of Section 32(1) of the Lanham Act, 15 U.S.C.

§ 1114(1).

## SECOND CLAIM FOR RELIEF
### Trademark Infringement, False Designation
### of Origin, Passing Off, and Unfair Competition
### Under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A)

53.     The Glioblastoma Foundation repeats and realleges every allegation set forth in

paragraphs 1-50 above.

54.     The Glioblastoma Foundation has prior common law rights in the

GLIOBLASTOMA FOUNDATION Trademarks because these trademarks acquired

distinctiveness long before Defendant's first commercial use of the Infringing Trademarks.

55.     Defendant's use of the Infringing Trademarks, as described above, is likely to

cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of

Defendant, its products and services, and/or its commercial activities by or with the

Glioblastoma Foundation, and thus constitute trademark infringement, false designation of

origin, passing off, and unfair competition in violation of Section 43(a) of the Lanham Act, 15

U.S.C. § 1125(a).

**THIRD CLAIM FOR RELIEF**
**Trademark Infringement and Unfair Competition**
<u>**Under O.C.G.A. § 23-2-55**</u>

56.    The Glioblastoma Foundation repeats and realleges every allegation set forth in

paragraphs 1-50 above.

57.    Georgia's O.C.G.A. § 23-2-55 prohibits any attempt to encroach upon the

business of another by the use of similar trademarks or names with the intention of deceiving and

misleading the public.

58.    Defendant's actions described above have damaged the Glioblastoma Foundation

and will, unless enjoined by the Court, further impair the value of the GLIOBLASTOMA

FOUNDATION Marks and the Glioblastoma Foundation's reputation and goodwill.  This harm

constitutes an injury for which the Glioblastoma Foundation has no adequate remedy at law.

59.    By reason of the foregoing, the Glioblastoma Foundation is entitled to permanent

injunctive relief against Defendant, restraining it from any further acts of encroaching on the

Glioblastoma Foundation's business and recovery of any damages (to the extent calculable)

proven to have been caused by reason of Defendant's acts, among other remedies provided for

by law.

**FOURTH CLAIM FOR RELIEF**
**Deceptive Trade Practices**
**Under O.C.G.A. § 10-1-372 *et seq.***

60.    The Glioblastoma Foundation repeats and realleges every allegation set forth in paragraphs 1-50 above.

61.    Defendant's aforementioned activities constitute deceptive trade practices in violation of Georgia law, O.C.G.A. § 10-1-372 *et seq*.

62.    The Glioblastoma Foundation's services are directed to consumers, including donors, potential donors, funding recipients and others who have been and are being injured by Defendant's deceptive trade practices in trade or commerce.

63.    Defendant's conduct has damaged the Glioblastoma Foundation and will, unless enjoined by the Court, further impair the value of the GLIOBLASTOMA FOUNDATION Marks and the Glioblastoma Foundation's reputation and goodwill.  This harm constitutes an injury for which the Glioblastoma Foundation has no adequate remedy at law.

64.    By reason of the foregoing, the Glioblastoma Foundation is entitled to permanent injunctive relief against Defendant, restraining it from any further acts of deceptive trade practices and recovery of any damages (to the extent calculable) proven to have been caused by reason of Defendant's aforesaid acts, among other remedies provided for by law.

**FIFTH CLAIM FOR RELIEF**
**Trademark Infringement and Unfair Competition**
**Under Georgia Common Law**

65.    The Glioblastoma Foundation repeats and realleges every allegation set forth in paragraphs 1-50 above.

66.    The Glioblastoma Foundation has common law rights in the GLIOBLASTOMA FOUNDATION Marks in Georgia and nationwide.

67.     Defendant's actions described above create the impression in the minds of the public that the Glioblastoma Foundation is responsible for the quality and performance of Defendant's products/services, or is otherwise affiliated, connected, or associated with Defendant, its products/services, and/or its commercial activities.  Thus, Defendant's aforementioned actions are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with the Glioblastoma Foundation or its GLIOLBASTOMA FOUNDATION Marks, or as to the origin, affiliation, connection, association, sponsorship, or approval of Defendant, its services, and/or its commercial activities by or with the Glioblastoma Foundation.

68.     Defendant has acted, and continues to act, willfully, deliberately, and with full knowledge of the Glioblastoma's use of and common law rights in its GLIOBLASTOMA FOUNDATION Marks and without regard to the likelihood of confusion and misleading of the public created by Defendant's actions.

69.     Defendant's acts constitute infringement of the Glioblastoma Foundation's proprietary rights in its GLIOBLASTOMA FOUNDATION Marks, misappropriation of the Glioblastoma Foundation's goodwill in those marks, and unfair competition under Georgia common law.

70.     Defendant's conduct has irreparably damaged the Glioblastoma Foundation and will, unless enjoined by the Court, further impair the value of the GLIOBLASTOMA FOUNDATION Marks and the Glioblastoma Foundation's reputation and goodwill.  This harm constitutes an injury for which the Glioblastoma Foundation has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, the Glioblastoma Foundation requests that this Court enter judgment in its favor on each and every claim for relief set forth above and award it relief, including but not limited to the following:

A.      An Order declaring that Defendant's use of the Infringing Trademarks infringes the Glioblastoma Foundation's rights in its GLIOBLASTOMA FOUNDATION Trademarks and constitutes trademark infringement and unfair competition under federal and/or state law, as detailed above.

B.      An Order enjoining Defendant and its employees, agents, partners, officers, directors, owners, shareholders, principals, subsidiaries, related companies, affiliates, distributors, dealers, and all persons in active concert or participation with any of them:

1.      From using or registering the Infringing Trademarks and/or any other confusingly similar marks, logos, designs, source identifiers, or designations in any manner likely to cause confusion with the GLIOBLASTOMA FOUNDATION Trademarks, or otherwise injure the Glioblastoma Foundation or its reputation;

2.      From representing by any means whatsoever, directly or indirectly, that any products or services offered by Defendant, or any activities undertaken by Defendant, are associated or connected in any way with the Glioblastoma Foundation, or are sponsored or authorized by or affiliated with the Glioblastoma Foundation;

3.      From assisting, aiding, or abetting any other person or entity in engaging in or performing any of the activities in subparagraph B(1) above.

C.      An Order directing Defendant to immediately delete or destroy all products, advertisements, promotional materials, stationery, forms, videos, posts, "tweets," uploads, and/or any other materials and things that contain or bear the Infringing Trademarks and/or any other marks, logos, designs, source identifiers, or designations likely to cause confusion with the GLIOBLASTOMA FOUNDATION Trademarks and/or injuries the Glioblastoma Foundation or its reputation.

D.      An Order directing Defendant to implement and maintain negative keywords that block Defendant from Google and Bing search results for all searches of the GLIOBLASTOMA FOUNDATION Trademarks.

E.      An Order directing Defendant to account for and return all donations received by Defendant that were intended for the Glioblastoma Foundation.

F.      An Order directing Defendant to, within thirty (30) days after the entry of the injunction, file with this Court and serve on Glioblastoma Foundation's attorneys a report in writing and under oath setting forth in detail the manner and form in which Defendant has complied with the injunction.

G.      Any further relief as the Court may deem just and appropriate.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, the Glioblastoma Foundation demands a trial by jury.

Dated:  September 4, 2024          Respectfully submitted,


    /s/ R. Gordon Wright         
R. Gordon Wright (Ga. Bar No. 331339)
271 17th Street, NW, Suite 1400
Atlanta, GA 30363
Telephone: (404) 653-6400
Facsimile: (404) 653-6444
**FINNEGAN, HENDERSON, FARABOW**
  **GARRETT & DUNNER, LLP**
gordon.wright@finnegan.com

Naresh Kilaru (*pro hac vice* pending)
901 New York Avenue, NW
Washington, DC 20001
Telephone: (202) 408-4000
Facsimile: (202) 408-4400
**FINNEGAN, HENDERSON, FARABOW**
  **GARRETT & DUNNER, LLP**
naresh.kilaru@finnegan.com

Daniel R. Mello, Jr. (*pro hac vice* pending)
Stanford Research Park
3300 Hillview Avenue
Palo Alto, CA 94304-1203
Telephone: (650) 849-6600
Facsimile: (650) 849-6666
**FINNEGAN, HENDERSON, FARABOW**
  **GARRETT & DUNNER, LLP**
daniel.mello@finnegan.com

*Attorneys for the Glioblastoma Foundation, Inc.*